UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN RIVER AG, INC., a California Corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>VESTIS GROUP, an Illinois Corporation, and CONSOLIDATED MILL SUPPLY, INC., an Illinois Corporation doing business as VESTIS GROUP,<br><br>             Defendant. | No. 2:19-cv-02203-TLN-DB<br><br><br><br>**ORDER** |
| VESTIS GROUP, an Illinois Corporation, and CONSOLIDATED MILL SUPPLY, INC., an Illinois Corporation doing business as VESTIS GROUP,<br><br>             Counterclaimants,<br><br>      v.<br><br>AMERICAN RIVER AG, INC., a California Corporation,<br><br>             Counter-Defendant. | |

///

///

1

This matter is before the Court pursuant to Plaintiff American River AG, Inc.'s ("Counter-Defendant") Motion to Strike.  (ECF No. 17.)  Defendants Vestis Group ("Vestis") and Consolidated Mill Supply, Inc. (collectively, "Counterclaimants") oppose Counter-Defendant's motion.  (ECF No. 19.)  Counter-Defendant has filed a reply.  (ECF No. 21.)  Having carefully considered the briefing filed by both parties, the Court hereby DENIES Counter-Defendant's Motion to Strike.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

This breach of contract dispute arises from an agreement between the parties for the sale of dehydrated sweet potato culls.  (*See* ECF Nos. 1, 13.)  Counter-Defendant "warehouses and processes . . . sun-dried sweet potatoes and other agricultural commodities for use as ingredients that are sold into the pet food market."  (ECF No. 13 at 6.)  Counterclaimants are distributors that partner with manufacturers and suppliers "to provide quality imported and domestic food products and related customized blending, milling, warehousing, and other similar services to its various customers."  (*Id.*)

In late 2017, Counterclaimants began purchasing dehydrated sweet potato culls from Counter-Defendant for resale to their customers, including Fairview Mills ("Fairview"), on an as-needed, spot basis pursuant to purchase orders (the "Purchase Orders") that were issued by Counterclaimants to Counter-Defendant.  (*Id.* at 7.)  On or about September 15, 2018, the parties entered into an agreement (the "Agreement") for the purchase of 10 million pounds of conventional sweet potato culls.  (*Id.*)  The Agreement contained other material terms, such as the applicability of California law.  (ECF No. 1 at 2.)  The term of the Agreement was to run from January 1, 2019 (the "Effective Date") to December 31, 2019.  (ECF No. 13 at 7.)

After the execution of the Agreement and prior to the Effective Date, Counterclaimants continued to purchase dehydrated sweet potato culls from Counter-Defendant on an as-needed, spot basis pursuant to the Purchase Orders.  (*Id.* at 8.)  Through one such spot order in or around September 2018, Counterclaimants purchased fifteen loads of dehydrated sweet potato culls for

---

[1]   The following recitation of facts are taken, sometimes verbatim, from the Counterclaim.  (*See* ECF No. 13.)

1   delivery to Fairview, which Fairview had intended to process into a pre-blend that it would sell to

2   Merrick Pet Care, Inc. ("Merrick") for a large production run.  (*Id.* at 8–9.)  The first four of these

3   shipments were infested with insects and larvae, and therefore summarily rejected by Fairview.

4   (*Id.*)  Counterclaimants allege Merrick refused to accept any product processed by Counter-

5   Defendant going forward as a result of the insect and larvae infested shipments.  (*Id.*)

6   Consequently, Counterclaimants refused to accept delivery of all the sweet potato culls sold under

7   the contract.  (ECF No. 1 at 3.)

8           This action was filed by Counter-Defendant (or Plaintiff) against Counterclaimants (or

9   Defendants) on October 31, 2019.  (ECF No. 1.)  Counterclaimants filed with its Answer a

10  Counterclaim alleging seven claims against Counter-Defendant on February 6, 2020.  (ECF No.

11  13.)  On March 19, 2020, Counter-Defendant filed the instant motion to strike.  (ECF No. 17.)

12  On April 15, 2020, Counterclaimants filed an opposition (ECF No. 19), and on April 22, 2020,

13  Counter-Defendant filed a reply (ECF No. 21).

14          **II.     STANDARD OF LAW**

15          Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any

16  redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court will

17  only consider striking a defense or allegation if it fits within one of these five categories.  *Yursik*

18  *v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal.

19  Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir.

20  2010)).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money

21  that must arise from litigating spurious issues by dispensing with those issues prior to trial."

22  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, Rule 12(f)

23  motions are "generally regarded with disfavor because of the limited importance of pleading in

24  federal practice, and because they are often used as a delaying tactic."  *Neilson v. Union Bank of*

25  *Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).  "Ultimately, whether to grant a motion

26  to strike lies within the sound discretion of the district court."  *Id.*  Unless it would prejudice the

27  opposing party, courts freely grant leave to amend stricken pleadings.  *Foman v. Davis*, 371 U.S.

28  178, 182 (1962); *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973); *see also* Fed. R. Civ. P.

15(a)(2).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery.  *See generally Whittlestone, Inc.*, 618 F.3d at 974–75.

### III.  ANALYSIS

Counterclaimants allege seven claims: (1) breach of contract with respect to the Agreement; (2) breach of contract with respect to the Purchase Orders; (3) breach of an express warranty in violation of California Commercial Code § 2313; (4) breach of the implied warranty of fitness for a particular purpose in violation of California Commercial Code § 2315; (5) breach of the implied warranty of merchantability in violation of California Commercial Code § 2314; (6) negligent interference with prospective economic relations; and (7) fraud in the inducement. (*See* ECF No. 13 at 13–20.)  Counter-Defendant moves to strike paragraphs 15, 22, 25, 38, 43, and 49 of the Counterclaim.  (ECF No. 17 at 2–3.)  Counter-Defendant argues: (1) paragraphs 22, 38, 43, and 49 are immaterial, impertinent, and scandalous; (2) paragraph 15 is impertinent; and (3) paragraph 25 is immaterial and impertinent.  (*See* ECF No. 18.)  The Court will consider each of Counter-Defendant's arguments in turn.

### A.  Paragraphs 22, 38, 43, 49

Counterclaimants allege in paragraphs 22, 38, 43, and 49 information about Counter-Defendant's "illegal and unsanitary operations," which includes facts that directly "affected [Counter-Defendant]'s ability to comply with its contractual obligations."  (ECF No. 13 at 9–11, 13, 14.)  Counter-Defendant moves to strike paragraphs 22, 38, 43, and 49 on the basis that such allegations are immaterial, impertinent, and scandalous.  (*See* ECF No. 18 at 2, 5–6.)  The Court will first consider the immaterial and impertinent arguments, and then address the scandalous argument.

#### i.      *Immaterial and Impertinent*

Counter-Defendant argues "the alleged lawsuit and actions taken by 'various neighbors' ([ECF No. 13 ]¶¶ 22a.–22b.), [the] issuance of an air quality violation notice by the local agency ([*Id*. at ]¶¶ 22c., 22f., 22g., 22i.), the requirement of a County business license ([*Id*. at ]¶¶ 22d.–

22e., 22j.–22l.), [and] an application for a County Use Permit ([*Id*. at ]¶¶ 22m[.]–22p.)" are immaterial and impertinent to a breach of contract. (ECF No. 18 at 5–6.) Counter-Defendant contends paragraphs 38, 43, and 49 "simply reference the conclusions" of paragraph 22 and are therefore immaterial and impertinent as well. (*Id*. at 6.)

In opposition, Counterclaimants argue Counter-Defendant fails to demonstrate these allegations are prejudicial or lack logical connection to a stated claim, both of which are required in a motion to strike. (ECF No. 19 at 7–9.) With respect to prejudice, Counterclaimants assert Counter-Defendant does not "challenge the truth of these allegations" and that it "fails to reference, let alone demonstrate" that it has suffered prejudice. (*Id*. at 8.) Counterclaimants contend, pursuant to *N.Y.C. Emps.' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128–29 (N.D. Cal. 2009), the Court may deny Counter-Defendant's motion based on its failure to argue the allegations are untrue or prejudicial.[2] (*Id*.) With respect to a logical connection, Counterclaimants note these paragraphs "are all pertinent, material[,] and go to the very heart of these claims," as "illegal and unsanitary operations are relevant to and consistent with" Counterclaimants' allegations that Counter-Defendant's product that was not "'within spec[]' while using 'good manufacturing processes,'" thereby in breach of the Agreement. (*Id*. at 9.)

"Immaterial matters are 'those which ha[ve] no essential or important relationship to the claim for relief or the defense being pleaded.'" *Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, No. 3:20-cv-02453-BEN-WVG, 2021 WL 689914, at *3 (S.D. Cal. Feb. 23, 2021) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds sub nom. Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (internal quotation marks omitted)). "A statement of unnecessary particulars in connection with and descriptive of a material matter may be stricken as 'immaterial.'" *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (citing *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120 n.5 (D.P.R. 1972); *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946)). "An 'impertinent' allegation is neither responsive nor relevant to the issues involved in the action" and "consists of statements that do not pertain and are unnecessary to the

---

[2]    The Court declines to address the issue of whether *Berry* is applicable, as it finds that paragraphs 22, 38, 43, and 49 are material and pertinent to the Counterclaim.

1  issues in question." *Id.* (internal citations omitted).

2     Here, the Court finds Counterclaimants' argument persuasive.  Claim One, or the breach

3  of contract with respect to the Agreement claim, alleges Counter-Defendant materially breached

4  the Agreement by failing to provide product "within spec" while utilizing "good manufacturing

5  processes."  (ECF No. 13 ¶ 41.)  Claim Two, or the breach of contract with respect to the

6  Purchase Orders claim, alleges Counter-Defendant breached the Purchase Orders "[b]y providing

7  [Counterclaimant] with product that was infested with insects and larvae and/or otherwise

8  fail[ing] to comply with [Counterclaimant's] product specifications."  (*Id.* at ¶¶ 48–49.)  Claim

9  Seven, or the fraud in the inducement claim, also alleges Counter-Defendant "falsely represented"

10  it would deliver product "within spec" while utilizing "good manufacturing processes."  (*Id.* at ¶

11  74.)  In light of these allegations, Counterclaimants are correct in that paragraphs 22, 38, 43, and

12  49 "directly support [these] counterclaims."  (ECF No. 19 at 9 (emphasis omitted).)

13     In paragraphs 22, 38, 43, and 49, Counterclaimants allege Counter-Defendant's neighbors

14  filed a lawsuit against Counter-Defendant with claims for "a public and private nuisance, trespass,

15  negligence and unlawful business practices[,] alleging that [Counter-Defendant]'s operations

16  result in constant noxious odor events, insect infestations[,] and other actionable conditions."

17  (ECF No. 13 at 9.)  Counterclaimants further allege the neighbors submitted numerous complaints

18  to government agencies regarding the foregoing, for which Counter-Defendant received a notice

19  of violation for causing a public nuisance, and subsequently its license was revoked and its use

20  permit application was denied.  (ECF No. 13 at 9–14.)  The allegations in the aforementioned

21  paragraphs have an "essential or important relationship to the claim for relief . . . being pleaded"

22  and is "responsive [and] relevant to the issues involved" because they indicate *how* Counter-

23  Defendant failed to use good manufacturing processes and why the product may have been

24  infested with insects and larvae.  *See Soil Retention Prod., Inc.*, 2021 WL 689914, at *3;

25  *Wilkerson v. Butler*, 229 F.R.D. at 170.  These facts directly relate to allegations in Claims One,

26  Two, and Seven.  Accordingly, the Court finds these allegations are neither immaterial nor

27  impertinent.

28  ///

1
               *ii.*       *Scandalous*

2
      Counter-Defendant argues the allegations referencing the neighbors' complaints are

3
"scandalous" as they "improperly cast a derogatory light" by implying Counter-Defendant

4
"operates its business outside the law." (ECF No. 18 at 6.) Counter-Defendant also contends

5
prejudice will arise if "a lot of biased misinformation and immaterial matter will be pla[c]ed

6
before the trier of fact." (ECF No. 21 at 2.) Counterclaimant contends in opposition that

7
Counter-Defendant does not "demonstrate how allegations based on information from ongoing

8
litigation and many other publicly available sources are scandalous." (ECF No. 19 at 8.)

9
      "A 'scandalous' matter improperly casts a derogatory light on someone, usually a party"

10
and may be stricken if it "bears no possible relation to the controversy or may cause the objecting

11
party prejudice." *Wilkerson*, 229 F.R.D. at 170 (internal citations omitted). The need to strike

12
scandalous allegations is lessened if pleadings are withheld from the jury or the jury is instructed

13
as to the weight to be given the pleadings. *See Federated Dep't Stores, Inc. v. Grinnell Corp.*,

14
287 F. Supp. 744, 748 (D.C.N.Y. 1968) (discussion of withholding prejudicial pleadings from the

15
jury). "[D]oubt concerning the import of the allegations to be stricken weighs in favor of denying

16
the motion to strike." *Park v. Welch Foods, Inc.*, No. 5:12-cv-06449-PSG, 2014 WL 1231035, at

17
*1 (N.D. Cal. Mar. 20, 2014).

18
      Here, the allegations at issue are not superfluous and "bear [some] possible relation to"

19
Claims One, Two, and Seven because they detail the extent to which Counter-Defendant operated

20
its unsanitary production process and therefore was unable to provide Counterclaimants with

21
products that met particular specifications. *See Wilkerson,* 229 F.R.D. at 170. Counterclaimants

22
are correct these allegations reference "ongoing litigation and many other publicly available

23
sources" (ECF No. 19 at 8), and the Court therefore finds the risk of prejudice to Counter-

24
Defendants is low. Counter-Defendants may also raise the issue of prejudice at a later stage of

25
the litigation if the jury is to see these pleadings. Consequently, the Court finds these allegations

26
are not scandalous.

27
      Based on the foregoing, the Court DENIES Counter-Defendant's motion to strike

28
paragraphs 22, 38, 43, and 49.

1    B. Paragraph 15

2         Counterclaimants allege "it was an implied term of the Agreement that [Counter-

3    Defendant] would conduct its operations in a sanitary manner and in compliance with all

4    applicable laws, regulations and licensing requirements." (ECF No. 13 ¶ 15.) Counter-Defendant

5    moves to strike paragraph 15 as "impertinent," arguing "[t]here is no basis in law for such an

6    implied term of the contract" and noting implied terms "are justified only when they are not

7    inconsistent with some express term of the contract and, in the absence of such implied terms, the

8    contract could not be effectively performed." (ECF No. 18 at 6–7 (citing *Series AGI West Linn of*

9    *Appian Group Investors DE, LLC v. Eves*, 217 Cal. App. 4th 156, 168–69 (2013)).)

10        In opposition, Counterclaimants assert there is an implied term in every contract that

11   "prevent[s] a contracting party from engaging in conduct which (while not technically

12   transgressing the express covenants) frustrates the other party's rights to the benefits of the

13   contract." (ECF No. 19 at 10.) Counterclaimants acknowledge that *Series AGI* "stands for the

14   proposition that implied contractual obligations that are 'inconsistent with' the express terms of a

15   contract are prohibited," but maintain that the implied terms that Counter-Defendant "would

16   conduct its operations in a sanitary manner and in compliance with all applicable laws,

17   regulations, and licensing requirements" are not inconsistent with the express terms of the

18   Agreement (*Id.* at 10–11.) The Court agrees with Counterclaimants.

19        "Implied covenants will be found if after examining the contract as a whole it is so

20   obvious that the parties had no reason to state the covenant." *Ben-Zvi v. Edmar Co.*, 40 Cal. App.

21   4th 468, 473 (1995), *as modified* (Nov. 21, 1995) (quoting *College Block v. Atlantic Richfield*

22   *Co.*, 206 Cal. App. 3d 1376, 1380 (1988)). "Unexpressed provisions of a contract may be

23   inferred from the writing or external facts." *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App.

24   5th 506 (2021), *reh'g denied* (July 8, 2021) (quoting *Cal. Lettuce Growers v. Union Sugar Co.*,

25   45 Cal. 2d 474, 482 (1955)). Moreover, an "implied covenant of good faith and fair dealing exists

26   in every contract." *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1166 (E.D. Cal.

27   2009). Such a covenant "is aimed at making effective the agreement's promises" and "requires

28   that neither party do anything which will deprive the other of the benefits of the agreement." *Id.*

8

(quoting *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th. 390, 400 (2000); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 91 (1995)).  "The implied covenant 'prevent[s] a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'"  *Id.* (quoting *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031–32 (1992)).

Here, based on the language they use, Counterclaimants seem to suggest Counter-Defendants breached the implied covenant of good faith and fair dealing, thereby breaching the Agreement or Purchase Orders.  The Court finds this directly pertains to Claims One, Two, and Seven (the breach of contract and fraud in the inducement claims).  Whether Counter-Defendant's failure to "conduct its operations in a sanitary manner and in compliance with all applicable laws, regulations, and licensing requirements" is "responsive and relevant to" whether Counterclaimant's "rights to the benefits of the [Agreement]" were frustrated.  *See Britz Fertilizers, Inc.*, 665 F. Supp. 2d at 1166; *Wilkerson v. Butler*, 229 F.R.D. at 170.  Even if Counterclaimants suggest paragraph 15 is a different implied term of the contract, a trier of fact could find such a provision is "so obvious" that the parties had no reason to state it.  *See Ben-Zvi*, 50 Cal. App. 4th at 473.

Based on the foregoing, the Court DENIES Counter-Defendant's motion to strike paragraph 15.

### C.      Paragraph 25

In paragraph 25, Counterclaimants allege Counter-Defendant "failed to disclose to [Counterclaimants] that it lacks the requisite permits and business license to conduct operations, [Counter-Defendant's] business operations in violation of numerous laws and have (since 2017) been causing a public nuisance, the . . . [p]roduct would be insect[-]infested, rancid and/or toxic or that it would be otherwise unable to meet its obligations under the Agreement."  (ECF No. 13 ¶ 25.)  Counter-Defendant moves to strike this paragraph, arguing that "these [] matters are immaterial and impertinent" and "no such duty [to disclose it lacked the permits and license to conduct operations] exists as a matter of law."  (ECF No. 18 at 3, 6–7; *see also* ECF No. 21 at 3.) ///

1    In opposition, Counterclaimants argue their "allegations in paragraph 25 . . . support

2  [Counterclaimants'] fraud in the inducement claim against [Counter-Defendant]."  (ECF No. 19

3  at 12.)  Counterclaimants contend Counter-Defendant does not offer "a shred of legal authority

4  for th[e] conclusion" that there is no duty to disclose and assert that its fraud claim can rely on

5  "'[d]eceit based on concealment,' . . . if the 'defendant was under a duty to disclose the fact to the

6  plaintiff.'"  (ECF No. 19 at 13 (quoting *Copart, Inc. v. Sparta Consulting, Inc.*, 227 F. Supp. 3d

7  1127, 1148 (E.D. Cal. 2017).)  Counterclaimants argue Counter-Defendant acted fraudulently by

8  concealing its unlawful and unsanitary operations "in an effort to induce [Counterclaimants] to

9  enter the Agreement."  (*Id.*)

10    "To prevail on a fraudulent inducement cause of action, a plaintiff must prove: (1)

11  concealment of a material fact[;] (2) which defendant had a duty to disclose[;] (3) the defendant

12  intentionally concealed the fact with the intent to defraud[;] (4) the plaintiff must have been

13  unaware of the fact and would not have acted as he did if he had known of the concealed fact[;]

14  and (5) as a result, sustained damage."  *Dienes v. FCA US LLC*, No. 16-cv-1812-AJB-BGS, 2018

15  WL 1258118, at *1 (S.D. Cal. Mar. 12, 2018) (citing *Moncada v. West Coast Quartz Corp.*, 221

16  Cal. App. 4th 768, 775 (2013)).

17    Here, paragraph 25 contains factual allegations sufficient to plead the first element

18  required to establish a fraudulent inducement claim.  In paragraph 25, Counterclaimants allege

19  Counter-Defendants concealed the material facts that "it lacks the requisite permits and business

20  license to conduct operations, [its] business operations [have been] in violation of numerous laws

21  and have (since 2017) been causing a public nuisance," and the product is "insect[-]infected,

22  rancid, and/or toxic," and it is "otherwise unable to meet its obligations under the Agreement."

23  Paragraph 25 is also material to and pertains to Counterclaimants' breach of contract claims.

24  Accordingly, the allegations in paragraph 25 have an "essential or important relationship to the

25  claim for relief . . . being pleaded" and are "responsive [and] relevant to the issues involved."  *See*

26  *Soil Retention Prod., Inc.*, 2021 WL 689914, at *3; *Wilkerson v. Butler*, 229 F.R.D. at 170.

27    Based on the foregoing, the Court DENIES Counter-Defendant's motion to strike

28  paragraph 25.

1

**IV.    CONCLUSION**

2

For the aforementioned reasons, the Court hereby DENIES Counter-Defendant's Motion

3   to Strike.  (ECF No. 17.)  Parties are requested to file a Joint Status Report within thirty (30) days.

4

IT IS SO ORDERED.

5   Dated:  August 26, 2021

6

7

8

_____

9

Troy L. Nunley
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11